| Fill in this information to identify the case: |
|---|
| Debtor name   **Precision-Aire Inc.** |
| United States Bankruptcy Court for the:   EASTERN DISTRICT OF NEW YORK |
| Case number (if known)   24-72210-ast |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

**Precision-Aire Inc.** 's Plan of Reorganization, Dated September 5, 2024

**Background for Cases Filed Under Subchapter V**

    **A. Description and History of the Debtor's Business**

Precision-Aire Inc. ("Precision-Aire") is an individually owned company headquartered in Bohemia, New York.   Precision-Aire leases its premises from Three Star Holdings LLC and has an address of 2100-9 Arctic Ave. Bohemia New York 11716.

The Debtor is a heating, ventilating and air conditioning ("HVAC") contractor serving primarily commercial accounts.   The Debtor was founded in 1987. Richard Troy acquired the company in March of 2014.   He also acquired a related company, Precision Pipe Fitters, Inc. ("Pipe") which was founded by the previous owner to retain the union contract for the union workers utilized by Precision-Aire.   The Debtor continued this structure with the only difference being that, unlike its predecessor, the Debtor utilizes its union workers on all of its projects.

In or about March of 2015, the Debtor borrowed from Santander Bank, N.A. ("Santander"), the sum of $850,000.00.   A first modification of that loan dated as of May 1, 2017 increased the balance of the loan to an amount not to exceed $1.0 million.   On May 1, 2018 the Santander loan matured.   In or about May 29, 2020, the Debtor and Santander entered into a forbearance agreement extending the payment date until May 1, 2021.   Santander also waived certain payments that were due in light of the Covid-19 pandemic.   In or about March 2021, Santander sold the loan to Rossrock LLC ("Rossrock").   The Debtor thereafter entered into a payment plan with Rossrock. As of the Petition Date, the Debtor was indebted to Rossrock in the amount of $515,832.00 (the "**Rossrock Debt**").

On January 5, 2023, the Debtor discovered that approximately $250,000.00 was stolen by its former Controller.   That theft was reported to the police.   The Debtor also discovered that the Controller had not paid certain vendors and had entered into cash advance transactions without my knowledge and consent.   The payments to this lender were being auto debited from the Debtor's accounts and straining cash flow.   The Debtor entered into new merchant cash advance agreements and used such funds to pay off the prior cash advance loan with the rest of the funds used for operations and paying the trade debt that was in arrears.   Specifically, the Debtor entered into transactions with Blue Ribbon Funding ("**BRF**"), Funders App LLC d/b/a Symplifi Capital ("Symplifi") and Square Advance LLC ("**Square**"), (**BRF, Symplifi** and **Square**, collectively referred to as "**MCA Lenders**").

**The MCA Lender Transactions**

**Symplifi** – (a/k/a FundersApp) On or about January 22, 2024, the Debtor entered into a transaction with Symplifi where, for a discounted purchase price of $750,000.00 less certain fees, Symplifi purchased 15% of the Debtor's future receivables in the amount of $1,012,500.00 payable by weekly scheduled remittances of $25,312.50. Symplifi filed a second position UCC Statement to support repayment of the amounts that would become due.

**Square** – On or about February 9, 2024, the Debtor entered into a transaction with Square where, for a discounted $329,800.00 payment, less certain other fees, Square purchased $465,800.00 of the Debtor's future receivables; payable by taking 8% of the receivables estimated to be $14,556.25, per week. Square filed a third position UCC to support repayment of the amounts that would become due.

**BRF** – On or about February 28, 2024, the Debtor and BRF entered into a transaction in where, for a discounted purchase price of $278,805 after closing costs of $21,245, BRF purported to purchase $449,700 of the Debor's future receivables, Under BRF's arrangement, BRF would debit the Debtor's account $4,599.00 on a daily basis. BRF filed its Fourth position UCC to support repayment of the amounts it believed would become due. The Debtor soon realized that the MCAs were withdrawing so much that it was unable to meet its obligations to vendors and subcontractors while trying to pay office staff, rent, truck leases, insurance and utilities. This resulted in liens being filed and loss of work.

Each of MCA Lenders defaulted the Debtor when there were insufficient funds to be debited if funds were not available because the Debtor was using its collections to pay its ordinary business obligations.

**Symplifi's enforcement efforts**. Symplifi's agreement required that the Debtor consent to jurisdiction in Connecticut, waive the right to notice and a hearing, and consent to ex parte prejudgment attachments.   It further had to consent that its bank account in New York could be attached as long as the bank had a branch in Connecticut. The Debtor was required to use a bank approved by Symplifi and sign a confession of judgment which was enforceable if Precision failed to pay. On or about May 13, 2024, Symplifi obtained its ex parte attachment of the Debtor's funds at JP Morgan Chase Bank N.A. Symplifi refused to release the hold on the account unless arrangements were made to pay the debt in full.

**Square's enforcement efforts**.   The Debtor's agreement with Square provided that upon default the full amount of the purchased receivables and any additional fees would become due. Because of the prior liens on its assets in favor of Rossrock and Symplifi, the Debtor was in default from the inception of the agreement. When funds were not available to meet Square's weekly draw, Square sent restraining notices to the Debtor's customers demanding that they not pay the Debtor but instead pay Square. Symplifi refused to release the restraints on the account unless arrangements were made to pay the debt in full.

The inability to use these funds severely impacted the Debtor's business and the Debtor was constrained to file its chapter 11 case. Despite the filing, the restraints were not immediately released. The inability to pay subcontractors and vendors led to the Debtor being terminated from certain projects, losing accounts and having to lay off some employees.   The damage to the Debtor's business became irreparable.

    **B. Liquidation Analysis**

    The Debtor's Plan is a plan of liquidation. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Despite the impact on its ability to sustain operations, the Debtor hopes to obtain as much going concern value for its assets as possible. A liquidation analysis is attached to the Plan as Exhibit **A**.

Debtor **Precision-Aire Inc.**  Case number (*if known*) _____
      Name

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan is a plan of liquidation and the payments to be made to all creditors will be tied to the Debtor's ability to collect its receivables and obtain value from the sale of its assets.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **Precision-Aire Inc.** (the *Debtor*) from the sale of assets.

This Plan provides for:    **1**    classes of priority claims;

                           **5**    classes of secured claims;

                           **1**    classes of non-priority unsecured claims; and

                           **1**    classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately ____ cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** .................................... | All allowed claims entitled to priority under § 507(a) of the Code. The Debtor does not believe there are any Class 1 Priority Claims. |
| 2.02 | **Class 2.1 Secured Claim of Rossrock** | The Claim of Rossrock, to the extent allowed as a secured claim under § 506 of the Code. Any amount remaining after liquidation of Rossrock's collateral will be a Class 3 Claim. |
| | **Class 2.2 Secured Claim of Symplifi** | The Claim of Symplifi, to the extent there are remaining proceeds of the liquidation of collateral after the payment in full of the Rossrock Claim, will be allowed as a secured claim under § 506 of the Code. Any remaining amount will be a Class 3 Claim. |
| | **Class 2.3 Secured Claim of Square Advance** | The Claim of Square, to the extent there are remaining proceeds of the liquidation of collateral after the payment in full of the Rossrock Claim and the Symplifi Claim, will be allowed as a secured claim under § 506 of the Code. Any remaining amount will be a Class 3 Claim. |
| | **Class 2.4 Secured Claim of BRF** | The Claim of BRF, to the extent there are remaining proceeds of the liquidation of collateral after the payment in full of the Rossrock Claim, the Symplifi Claim and the Square Claim will be allowed as a secured claim under § 506 of the Code. Any remaining amount will be a Class 3 Claim. |
| | **Class 2.5 Secured Claims of Holders of Liens on Specific Vehicles/Equipment** | The Claim of each holder of a lien on any specific vehicle or piece of equipment will, at the Debtor's discretion receive the return of such vehicle or equipment in full satisfaction of such holder's secured claim; with any deficiency becoming a Class 3 Claim or, upon the Debtor's sale of such vehicle or equipment receive payment in full of such holder's Class 2.5 Claim. |
| 2.03 | **Class 3 General Unsecured Claims** | All non-priority unsecured claims allowed under § 502 of the Code. On June 11, 2024 the Court entered an order setting August 16, 2024 as the last date for holders of general unsecured claims to file such claims. Holders of Class 3 Claims will receive their pro rata share of amounts received from the liquidation of unencumbered assets, net of payment of any Administrative and priority claims. |
| 2.04 | **Class 4** .................................... | Equity interests of the Debtor. This is a Plan of Liquidation. The Equity Interests will not be receiving any distribution under the Plan. |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan or as soon thereafter as reasonably practicable from the liquidation of assets, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid as soon as practicable after the effective date. The Debtor does not believe there are any Priority Tax Claims. |

| Debtor | **Precision-Aire Inc.** | Case number (*if known*) |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| 3.04 | **Statutory fees** | This is a subchapter v case there are no fees required to be paid under 28 U.S.C. § 1930. |
| 3.05 | **Prospective quarterly fees** | This is a subchapter v case there are no fees required to be paid under 28 U.S.C. § 1930. |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | Unimpaired | The Debtor does not believe there are any Class 1 Priority Claims. |
| **Class 2.1 Secured Claim of Rossrock** | Unimpaired | The Claim of Rossrock, to the extent there are proceeds from the liquidation of Rossrock's collateral will be a Class 3 Claim. |
| **Class 2.2 Secured Claim of Symplifi** | Unimpaired | The Claim of Symplifi, to the extent there are remaining proceeds of the liquidation of collateral after the payment in full of the Rossrock Claim, will be allowed as a secured claim under § 506 of the Code. Any remaining amount will be a Class 3 Claim. |
| **Class 2.3 Secured Claim of Square Advance** | Unimpaired | The Claim of Square, to the extent there are remaining proceeds of the liquidation of collateral after the payment in full of the Rossrock Claim and the Symplifi Claim, will be allowed as a secured claim under § 506 of the Code. Any remaining amount will be a Class 3 Claim. |
| **Class 2.4 Secured Claim of BRF** | Unimpaired | The Claim of BRF, to the extent there are remaining proceeds of the liquidation of collateral after the payment in full of the Rossrock Claim, the Symplifi Claim and the Square Claim will be allowed as a secured claim under § 506 of the Code. Any remaining amount will be a Class 3 Claim. |
| **Class 2.5 Secured Claims of Holders of Liens on Specific Vehicles/Equipment** | Unimpaired | The Claim of each holder of a lien on any specific vehicle or piece of equipment will, at the Debtor's discretion receive the return of such vehicle or equipment in full satisfaction of such holder's secured claim; with any deficiency becoming a Class 3 Claim or, upon the Debtor's sale of such vehicle or equipment receive payment in full of such holder's Class 2.5 Claim. |
| **Class 3 – Non-priority unsecured creditors** | Impaired | Holders of Class 3 Claims will receive their pro rata share of amounts received from the liquidation of unencumbered assets, net of payment of any Administrative and priority claims. |
| Class 4 - **Equity security holders of the Debtor** | Impaired | The Equity Interests will not be receiving any distribution under the Plan. |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim** | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| Debtor | **Precision-Aire Inc.** | Case number (*if known*) |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor reserves the right to assume, and if applicable assign, the following executory contracts and unexpired leases as of the effective date: its lease for its office and warehouse space located at 2100-9 Arctic Avenue Bohemia, NY 11716 |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

The Debtor is trying to market its business as a going concern and is in discussion with one entity for the acquisition of certain of its business assets. The Debtor is also going to market and sell all of its business assets including its owned trucks, cars, vans and a race car it used for marketing purposes. The proceeds off these sales will be used to fund the costs of administering the case and making distributions to creditors.

### Article 8: General Provision

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan. |
| 8.07 | **Corporate Governance** | Not applicable. |

| Debtor | **Precision-Aire Inc.** | Case number (*if known*) |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| 8.08 | **Retention of Jurisdiction** | Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the Final Decree has been entered closing the Chapter 11 Case, the Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Court shall retain jurisdiction for the following purposes:<br>(a) To consider any modification of the Plan pursuant to § 1193 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;<br>(b) To hear and determine:<br>(i) all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;<br>(ii) all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;<br>(iii) all rights or Causes of Action which may exist on behalf of the estate, including actions commenced to recover preferential transfers and other property of the estate;<br>(iv) applications for allowance of compensation and expense reimbursement of the Debtor's Professionals, and the Subchapter V Trustee, for periods prior to the Effective Date;<br>(v) any and all applications, adversary proceedings and litigated matters;<br>(vi) to enter a final decree closing the Chapter 11 Case; and<br>(vii) to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan. |

**Article 9: Discharge**

In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

Respectfully submitted,

**X** Richard Troy 09/05/2024          **Richard Troy**
[Signature of the Plan Proponent]          [Printed name]


**X** Gerard R. Luckman          **Gerard R. Luckman**
[Signature of the Attorney for the Plan Proponent]          [Printed name]